# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | BLANCHE M. MANNING | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1429 | **DATE** | MAY 1 3 2003 |
| **CASE TITLE** | Christopher Knox (#B-61090) vs. Captain Wainscott, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Pursuant to the initial review of the complaint required by 28 U.S.C. § 1915A, plaintiff may proceed on certain claims arising at Stateville Correctional Center. Claims relating to plaintiff's alleged mistreatment at Pontiac Correctional Center are dismissed without prejudice. Claims arising from disciplinary and grievance proceedings are dismissed with prejudice. The clerk is directed to correct the name of defendant Stateville Warden "Kenneth Bridley" to "Kenneth Briley." Summonses shall issue only for defendants Wainscott, Price, Foster, Griffin, Thomas, Miller, Briley, Mote, Cathings, Hughes and Lang, and the U.S. Marshal is appointed to serve them. All other defendants are dismissed. The clerk shall send plaintiff a Notice of Availability of a Magistrate Judge and Instructions for Submitting Documents along with a copy of this order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 1 4 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 5 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mjm | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER KNOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 1429 |
| ) | |
| CAPTAIN WAINSCOTT, et al., ) | |
| ) | |
| Defendants. ) | |

DOCKETED
MAY 1 4 2003

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, employees of the Illinois Department of Corrections, have violated the plaintiff's constitutional rights by using excessive force against him, subjecting him to an invasive body cavity search, denying him due process, acting with deliberate indifference to his medical needs, and exposing him to cruel and unusual conditions of confinement.

This matter is before the court for preliminary review, as required by 28 U.S.C. § 1915A. The court is required to dismiss a suit brought *in forma pauperis* at any time if the court determines that it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). Here, accepting the plaintiff's factual allegations as true, the court finds that the complaint sets forth certain colorable claims under 42 U.S.C. § 1983.

5

# FACTS

The plaintiff, Christopher Knox, is currently an inmate at the Sheridan Correctional Center. The plaintiff names thirty-one defendants, comprising officials and health care providers at the Stateville and Pontiac Correctional Centers as well as I.D.O.C. administrators.

The plaintiff alleges the following facts, which must be accepted as true for purposes of the court's threshold review:

## Count 1

On February 20, 2001, officials at the Stateville Correctional Center conducted a prison-wide "shakedown" to search for a set of missing keys and handcuffs. The plaintiff repeatedly demanded that the defendant Wainscott provide a shakedown slip so that the plaintiff could demonstrate that his cell had already been searched in the event of another shakedown. Wainscott refused the plaintiff's requests even though prison regulations require the issuance of a shakedown slip.

Later, Wainscott told the plaintiff that an informant had implicated him in the disappearance of the missing handcuffs and keys. When the plaintiff denied any knowledge, Wainscott became extremely hostile, taunting the plaintiff with racial epithets and threatening him with physical harm if he continued to refuse to cooperate.

## Count 2

The next day, February 21, 2001, Wainscott announced another shakedown. As the defendants Wainscott and Price escorted the plaintiff to another area, the plaintiff complained that the officers were hurting his arms. The plaintiff pivoted a little to relieve his arms and wrists, whereupon Wainscott roughly pulled him back. Price punched the handcuffed plaintiff in his jaw; Wainscott then slapped the plaintiff on the same side of his face that Price had just struck.

The officers took the plaintiff to a bullpen, where they were joined by the defendants Foster and Griffin. The officers informed the plaintiff that they were going to strip-search him. When the plaintiff complained that he had already been searched, the officers tore his clothes off and forced

him to bend over. The defendant Foster, who was wearing thick black "street gloves," forced two of his fingers into the plaintiff's rectum, causing physical injury.

The plaintiff asked to see a medical technician; in response, the defendant Griffin choked him until he lost bowel control and then consciousness. The plaintiff awoke to find himself alone in the bullpen, completely numb in his arms and covered in feces because the defendants had dragged him around the floor before leaving him there.

A Sergeant "Jane Doe" approached the plaintiff as he still lay on the floor. The plaintiff explained what had happened and told the officer he needed medical attention. The officer said, "Fuck you," and walked away.

The defendants Wainscott, Price, Griffin and Foster subsequently escorted the plaintiff to "control segregation." The defendants ignored the plaintiff's renewed pleas for medical care. The plaintiff was left naked in a cell that lacked a mattress or bedding, had no running water, and had a broken window that allowed in cold winter air. The walls, bed, sink and toilet were covered in feces. The stench was so intense that the plaintiff vomited several times.

After an unspecified period of time, the same defendants escorted the plaintiff to the health care unit, where the defendants Briley and a "John Doe" officer were waiting. The defendant Cathings arrived shortly thereafter and interrogated the plaintiff about the missing keys. The plaintiff told the health care unit administrator, Miller, that he had been assaulted and needed medical treatment, but she disregarded him.

Because the plaintiff denied any knowledge about the keys' whereabouts, the defendants Foster, Wainscott and Doe "slammed" him onto an examination table so that x-rays could be taken. The defendants' forceful actions caused the plaintiff to experience sharp back pain. The defendants Briley and Foster maliciously stretched the plaintiff's arms and legs, which were restrained with shackles and a connecting black box, so as to maximize pain. The radiologist, another John Doe defendant, then took x-rays to see if the missing keys were inside the plaintiff's body.

The radiologist repeatedly voiced grave concerns about the danger of over-exposing the plaintiff to x-rays. The defendants nevertheless ordered him to take three sets of full-body x-rays of the naked plaintiff. As the plaintiff was finally given a jumpsuit and preparing to leave the health care unit, he once again asked for medical care. The defendant Miller told him to sign up for sick call. The defendant Lang, an emergency room nurse, likewise affirmed "yes" when the plaintiff asked whether she was denying him medical treatment.

The defendant correctional officers, now joined by the defendant Mote, led the plaintiff back to his cellhouse through the snow without a coat, shoes or socks. The plaintiff's feet, hands and ears went numb. The officers told the plaintiff, "You'll be all right," when he told them he was numb from the cold and still needed medical care.

The defendants allowed the plaintiff to shower, then placed him in the same, unsanitary cell where he had been placed earlier. The defendants ignored the plaintiff's complaints that the inhumane conditions were illegal and that he needed medical attention.

The plaintiff was subsequently summoned to the office of the defendant Thomas, a cellhouse superintendent. Thomas questioned the plaintiff about the missing security items and the plaintiff persisted in denying any knowledge as to the whereabouts of the items. Thomas threatened, "Listen, punk, tell me who has those items or I'm personally going to kick your ass!"

Thomas then slapped the plaintiff with sufficient force that the plaintiff's mouth bled. The defendant Price repeatedly slammed the plaintiff's forehead on the desk. Wainscott held the back of the plaintiff's handcuffs so that he could not resist. Thomas finally told the officers to remove the plaintiff from his office. The defendants disregarded the plaintiff's requests for medical care. Wainscott and Price left the plaintiff back in the same dirty, barren cell where they had placed him earlier, removing his jumpsuit.

Count 3

In Count 3, the plaintiff reiterates his claim that the defendants Briley, Mote, Cathings, John and Jane Doe, Griffin, Wainscott, Price, Foster and Thomas all intentionally subjected him to cruel

and unusual punishment by placing him in a control segregation cell, the conditions of which were so inhumane and unsanitary as to rise to the level of an Eighth Amendment violation. In addition to the problems described in preceding paragraphs, the plaintiff adds that the cell was infested with cockroaches and that he was repeatedly bitten by bugs while held there.

The plaintiff also complains that a meal he was served while in the segregation cell was "contaminated" and non-nutritious. He alleges that he had to wait five hours for food; that the food was cold; that there was a hair in the food; and that after he ate, he became violently ill. When Jane Doe asked the plaintiff how he had liked his meal, he told her that he was sick and needed to see a medical technician, but she just walked away, refusing to call for medical help.

The defendant Price later informed the plaintiff that he was being transferred to the Pontiac Correctional Center. When the plaintiff asked why, Price simply responded, "You know how it goes." Price placed the plaintiff naked in a bullpen and denied his request for medical attention. The plaintiff describes the transfer as in retaliation for his lack of knowledge about the missing security items.

Count 4

The plaintiff was transferred to Pontiac the same day. A John Doe correctional officer at Pontiac informed the plaintiff that he was being placed in control segregation status and there was a "No Human Contact" order in place. Doe placed a face mask over the plaintiff's face, causing difficulty in breathing, panic and hyperventilation. When the plaintiff told Doe that he could not breathe, the officer told him to "stop crying like a little bitch" and twisted and pulled the plaintiff's handcuffed wrists. Doe placed the plaintiff behind a thickly paneled door and left him, ignoring the plaintiff's requests to see a med tech.

The plaintiff requested medical assistance again later, telling Officer Doe that he was experiencing fatigue, aching bones, migraine headaches, muscle stiffness, stomach cramps, pain in his jaw and pain in his rectum. The officer responded, "Oh, well, nigger," and walked away. The

plaintiff had to wait another hour before another officer agreed to escort him to Pontiac's health care unit.

The defendant Besley, a medical technician, conducted an initial screening while they awaited the doctor's arrival. The plaintiff told her all that had happened to him. Besley called the plaintiff a "baby," complained that the black inmates were always complaining, and then hit him in the groin so hard that he fell to the floor. The outraged plaintiff asked Besley why she had attacked him. Besley responded that she was angry because she would have preferred to be at home with her husband. She added, "That's for that nigger brother of yours assaulting staff here in Pontiac."

A John Doe physician walked into the emergency room at that point. The plaintiff once again related all that had happened to him and asked the doctor to prepare a rape evidence kit [in relation to the rectal exam the officers had performed at Stateville]. The doctor refused. The plaintiff further asked for treatment for radiation poisoning, telling the doctor that he was feeling achy and fatigued and that his hair was falling out in patches. The doctor refused to give the plaintiff a blood test to check for "radiation defects." The doctor did provide the plaintiff with pain medication and admitted him into the infirmary pending x-rays and further evaluation. However, Dr. Doe refused to address most of the plaintiff's medical concerns, merely assuring the plaintiff that he would be "just fine." When the plaintiff advised Doe about the groin injury inflicted by Besley, Doe pulled down the plaintiff's jumpsuit in a perfunctory manner but then zipped it back up without actually examining him.

## Count 5

In Count 5, the plaintiff restates his claim that the defendants Briley, Mote, Cathings, Griffin, Foster, Hughes, Officer John Doe, Lang, Thomas, Miller, Price, Wainscott, Sergeant Jane Doe, and radiologist John Doe all acted with deliberate indifference to the plaintiff's serious medical needs either by denying treatment or access to treatment at the Stateville Correctional Center, as discussed above. The plaintiff additionally claims that the defendant Lang falsified an injury report to cover up the malfeasance of her fellow officers.

Count 6

Count 6 relates to deliberate indifference on the part of Pontiac employees. The plaintiff reasserts his claims against the defendants Officer John Doe, Besley, and Dr. John Doe on the basis of the events outlined above.

The plaintiff additionally maintains that on or about February 22, 2001, the defendants Luster, Schomig and Quinely (Pontiac correctional officials), overruled a request by the plaintiff to check for "radiation defects." The officers told the defendants Funk and Hetman (medical care providers) that such an evaluation would not "be necessary."

Over the next month or so, the plaintiff wrote letters and/or appealed grievances to the defendants Snyder, Tucker, Ford and Cravens regarding the alleged denial of medical care. Those defendants apparently took no action on the plaintiff's letters. The defendants Collins, Hokes and Angishus (staff "physiologists") have likewise denied the plaintiff needed [but unspecified] medical treatment.

Count 7

In Count 7, the plaintiff alleges that he has suffered "physiological damages" in the form of paranoid schizophrenia, bipolar disorder, hallucinations and multiple personality disorder on account of his placement in solitary confinement. The plaintiff maintains that the defendants Schomig, Luster, Hetman, Funk, Collins, Angishus, Hokes, Melvin, Mote, Ford, Tucker, Cravens and Snyder have been responsible either for placing the plaintiff in isolation behind a perforated steel door or for effectively condoning the placement by taking no remedial action. The plaintiff contends that he has been deprived of human contact since February 22, 2001, through the present and cannot even communicate with other prisoners in the gallery due to the steel-plated doors separating them. The plaintiff additionally charges that the above-named defendants have falsified his medical records and denied his many requests for mental health care. The defendant Melvin has even mocked the plaintiff's predicament, asking him, "How's your mind doing?" and addressing him as "Bug" (as in "bugging out").

Count 8

The defendant Wainscott apparently issued the plaintiff a disciplinary report in connection with the lost security items; however, the plaintiff maintains that he never received a copy of the disciplinary ticket, nor any advance written notice of the charges. On March 2, 2001, a hearing was held on the disciplinary charges. The defendant Dallas, a member of the prison Adjustment Committee, denied the plaintiff's requests for a continuance and to submit a written statement in his defense. Dallas went on to find the plaintiff guilty of the charges. Dallas failed to consider exculpatory evidence and offered no justification for his decision. The plaintiff's ensuing grievance regarding the disciplinary action was denied at all levels of review. By the same token, the plaintiff's grievances concerning a denial of medical care, staff misconduct and other issues were similarly denied.

## **DISCUSSION**

Accepting the plaintiff's factual allegations as true, the court finds that the plaintiff has articulated several actionable claims under 42 U.S.C. § 1983. While a more fully developed record may belie the plaintiff's allegations, it is not the case that the plaintiff could prove "no set of facts" entitling him to relief under the Civil Rights Act. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972), *reh'g denied*, 405 U.S. 948 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). The complaint will be dismissed only as to certain claims and defendants.

The fifty-six-page complaint is broken into eight separate counts. Although the plaintiff seems to have divided the counts somewhat arbitrarily, the court will address each count in turn for purposes of clarity.

Count 1

Count 1 fails to state a viable constitutional claim. The defendant Wainscott may have violated prison regulations in failing to issue the plaintiff a shakedown slip. However, the matter implicates no constitutionally protected interest. Violations of state law are not, in and of

themselves, actionable as constitutional torts. *See, for example, Rowe v. DeBruyn*, 17 F.3d 1047, 1051 (7th Cir. 1994), *cert. denied*, 513 U.S. 1994 (1994).

Nor can the plaintiff recover damages for Wainscott's alleged threats and verbal abuse. Verbal harassment and use of derogatory racial epithets, while unprofessional and inexcusable, do not rise to the level of a constitutional violation. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987). Count I is dismissed to the extent that the plaintiff attempts to state a federal cause of action rather than provide background information in that count.

Count 2

Count 2 sets forth a number of cognizable constitutional claims. The plaintiff claims that the defendants Wainscott and Price (and later Wainscott, Price and Thomas) used unjustified force against him when he failed to provide satisfactory answers about the missing security items. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes "cruel and unusual punishment," which violates the Eighth Amendment and is actionable under 42 U.S.C. § 1983. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Williams v. Boles*, 841 F.2d 181 (7th Cir. 1988). The record will require further development as to whether the defendants applied force in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 6. Relevant factors in determining whether force was excessive include the nature and extent of the harm, the need for force, the threat to safety of staff and inmates, and the extent of the injury inflicted on the inmate. *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994). The defendants must respond to the plaintiff's allegations about multiple instances of excessive force.

The defendants Wainscott, Price, Griffin and Foster must also respond to the plaintiff's claim that they subjected him to a violent, invasive body cavity search and that Griffin choked him until he lost consciousness. Strip searches must be performed in a "reasonable" manner. *See, e.g., Peckham v. Wisconsin Dept. of Corrections*, 141 F.3d 694, 697 (7th Cir. 1998). If the plaintiff is

providing an accurate description of the rectal search which took place, then he may well be entitled to damages. Griffin may also be liable for choking the plaintiff, as may his fellow officers for failing to intervene. A correctional official is liable for a constitutional violation committed by another if he or she has a reasonable opportunity to intervene but fails to do so. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 744-78 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

The plaintiff may also proceed on his claim that the defendants denied him access to medical care after injuring him. Deliberately to ignore a request for medical assistance has long been held to be a form of cruel and unusual punishment. *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996), citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). It should nevertheless be noted that deliberate indifference only to "serious" medical needs implicates the Eighth Amendment. *Cooper*, 97 F.3d at 917, citing *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991).

Count 2 also raises a colorable Eighth Amendment conditions claim (the same claim is reiterated and expounded upon in Count 3). The Eighth Amendment imposes on prison officials the duty to furnish "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Prison conditions violate the Eighth Amendment when they exceed "contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994), citing *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). Prisons must provide a "minimal level of cleanliness and sanitation for the health and safety of the prisoners," *Lunsford*, 17 F.3d at 1580. In this case, the conditions allegedly endured by the plaintiff in the "control segregation" cell, even though of short duration, may have exceeded "contemporary bounds of decency." *Contrast Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("inmates cannot expect the amenities, conveniences and services of a good hotel"), with *Jackson*, 955 F.2d at 22 (objective component met where prison conditions were "strikingly reminiscent of the Black Hole of Calcutta").

The plaintiff may proceed on his claim that the multiple series of x-rays exposed him to undue risk of harm. As noted above, the Eighth Amendment prohibits deliberate indifference to inmates' health, safety, and medical needs. *Farmer*, 511 U.S. at 845. Of course, in order ultimately to prevail on his claims, the plaintiff will have to substantiate his claim by a preponderance of the evidence. The court questions the plausibility of the plaintiff's assertion that he immediately felt the effects of radiation poisoning. It strikes the court as highly doubtful that a series of x-rays would cause fatigue, bone aches and hair loss within hours of exposure, let alone cause serious long-term risk. The plaintiff will have to submit competent medical evidence to support his claim.

The plaintiff will also have to establish that his walk from the health care unit to his housing unit rose was so injurious as to amount to cruel and unusual punishment. Forcing a barefoot and improperly dressed inmate to walk outside in winter weather is certainly no cause for commendation. However, depending on the length of the walk, it seems unlikely that the matter rose to the level of an Eighth Amendment violation.

The plaintiff captions Count 2 as purporting a cause of action for retaliation. It is well established that punishing inmates for exercising their constitutionally protected rights violates the First Amendment. *See, e.g., Babcock v. White*, 102 F.3d 267, 274 (7th Cir. 1996). But here, the complaint fails to set forth a chronology of events from which retaliation can be inferred. The plaintiff does not allege that he was punished for engaging in protected activity such as, for example, filing grievances or lawsuits; rather, he claims that the defendants lashed out at him on account of his suspected involvement in [and refusal to cooperate in the investigation of] the loss or theft of an officer's keys and handcuffs. The plaintiff has no independent cause of action for retaliation.

Count 3

The plaintiff has stated an arguable claim with respect to the "contaminated" meal he was served while in Stateville's segregation unit. The plaintiff cannot recover damages for having to wait five hours for a meal. While the systematic malnourishment of a prisoner could constitute cruel and unusual punishment, the occasional missed meal does not. *See, e.g., Morrison v. Martin*, 755 F. Supp. 683, 686 (E.D. N.C.), *aff'd* 917 F.2d 1302 (4th Cir. 1990). Going without food for five hours does not approach the level of an Eighth Amendment violation. Furthermore, the fact that the meal was cold implicates no constitutional rights. *See Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1984) ("complaints about cold and poorly prepared food must fail"). Moreover, the discovery of an occasional foreign object is generally insufficient to establish an Eighth Amendment violation. *See, e.g., Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *Hoitt v. Vitek*, 497 F.2d 596, 601 (1st Cir. 1974).

Nevertheless, the plaintiff's allegations seem to suggest [no matter how improbably] that correctional officials intentionally served him tainted food.

> The state must provide an inmate with a "healthy, habitable environment." This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.

*French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986) (citations omitted). The plaintiff asserts that the food had a strong odor, that he began to vomit and have stomach cramps immediately after eating, and that the defendant Jane Doe insinuatingly asked how the plaintiff liked the food. His allegations support an inference that correctional officials intentionally gave him an unwholesome meal.

Although the plaintiff characterizes his transfer to the Pontiac Correctional Center as retaliatory, the court once again discerns no retaliatory animus. An inmate has no constitutionally protected interest in choosing his place of confinement. *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Bruscino v. Carlson*, 854 F.2d 162, 167 (7th Cir. 1988), *cert. denied*, 491 U.S. 907 (1989).

Prison officials may transfer an inmate for any constitutionally permissible reason or for no reason at all. *Id.* Where, as here, the plaintiff was transferred on suspicion of violating prison policy, and not for exercising a constitutionally protected right, the transfer cannot be deemed "retaliatory" in nature. *Brookins v. Kolb*, 990 F.2d 308, 315 (7th Cir. 1993). The complaint is devoid of facts from which a reasonable person could conclude that the plaintiff was transferred for exercising a protected right.

Count 5

In Count 5, the plaintiff restates his claim that the defendants Briley, Mote, Cathings, Griffin, Foster, Hughes, Officer John Doe, Lang, Thomas, Miller, Price Wainscott, Sergeant Jane Doe, and radiologist John Doe all acted with deliberate indifference to the plaintiff's serious medical needs either by denying treatment or access to treatment while the plaintiff was confined at the Stateville Correctional Center. As already noted, the plaintiff will be permitted to proceed on that claim.

However, the plaintiff has no separate cause of action against the defendant Lang for falsifying an injury report. Lang may have engaged in professional misconduct if she fabricated documents to cover up wrongdoing committed by her fellow officers. Nevertheless, her actions did not violate any constitutional right.

The complaint will also be dismissed as to the John and Jane Doe defendants at Stateville. Because the statute of limitations has expired, it is too late for the plaintiff to identify and serve the defendants Doe. There is a two-year statute of limitations for Section 1983 actions filed in Illinois. *See* 735 ILCS § 5/13-202; *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001). The plaintiff cannot avail himself of Rule 15(c)'s provisions allowing for "relation back" to the original complaint. In this circuit, a plaintiff cannot invoke the relation back principles of Rule 15(c) to replace John Doe defendants with named defendants after the statute of limitations has expired. *See Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993); *see also Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980). Unfortunately, the plaintiff waited until the eleventh hour to file suit; the complaint is dated one day prior to the expiration of the statute of limitations. It would therefore be

futile to allow the plaintiff to proceed against the John and Jane Doe defendants since any effort to ascertain their identities and name them now would be untimely.

Counts 4, 6, 7 and 8

Counts 4 and 6-8 concern alleged mistreatment following the plaintiff's transfer to the Pontiac Correctional Center. Counts 4, 6, 7 and 8 will be dismissed; the plaintiff must file a separate lawsuit if he wishes to sue Pontiac officials regarding events that have happened there.

The Pontiac Correctional Center (Livingston County) is situated in the federal judicial district of the Central District of Illinois, Peoria Division. *See* 28 U.S.C. § 93(c). Rule 20(a) of the Federal Rules of Civil Procedure permits persons to be joined in one action as defendants "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise out of the same action." In this case, although the plaintiff makes similar allegations of abuse and medical neglect on the part of Pontiac officials, those claims are separate and distinct from the plaintiff's claims against Stateville officials. Furthermore, the claims are easily severable, as a decision on the plaintiff's claims against Stateville officials would not affect any cause of action the plaintiff may have against Pontiac officials.

This court is particularly reluctant to hear the plaintiff's claims regarding Pontiac because the plaintiff complains of ongoing problems. The plaintiff challenges his continued placement in a steel-fronted segregation cell with no human contact. This court is unaware how the U.S. District Court for the Central District of Illinois has resolved any inmate claims challenging the conditions of confinement at Pontiac since that facility became a twenty-four hour "lockdown" prison where all inmates remain in segregation. Concerns such as comity, judicial efficiency, and conflicting rulings militate against this court entertaining a suit attacking living conditions in a prison situated in the Central Illinois judicial district.

Before filing another lawsuit, the plaintiff would be well advised to research his claims first in order to avoid a "strike" under 28 U.S.C. § 1915(g). For example, inmates generally cannot

challenge prison disciplinary convictions by way of a civil rights action. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). This holding has been extended to judgments in prison disciplinary proceedings. *See Edwards v. Balisok*, 520 U.S. 641, 644-45 (1997). The *Heck* rule applies even to claims by inmates who were not deprived of good time credits. *Stone-Bey v. Barnes*, 120 F.3d 718, 721-22 (7th Cir. 1997). Until the sentence has been invalidated, the cause of action for damages simply "does not accrue." *Heck*, 512 U.S. at 490.

In Count 8, the plaintiff additionally sues correctional administrators over the handling of his grievances concerning incidents at both prisons. Those claims and defendants must be dismissed with prejudice. Illinois' statutory grievance procedures do not create a protected interest. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Any right to a grievance is a procedural one, not substantive. *Id.* The failure of officials of the Administrative Review Board to rule favorably on the plaintiff's grievances is therefore not actionable under Section 1983.

The fact that the plaintiff may have also written letters to I.D.O.C. administrators is insufficient to implicate them in the alleged violations. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997) (citations omitted). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.* To be held liable under 42 U.S.C. § 1983, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . ." *Gentry*, 65 F.3d at 561 (citations omitted).

Even accepting as true that the plaintiff complained about his treatment at Stateville through letters and grievances, I.D.O.C. administrators cannot be expected to involve themselves with the minutiae of daily events in the lives of thousands of prisoners. *Hanna v. Lane*, 610 F. Supp. 32, 36 (N.D. Ill. 1984); *Partee v. Lane*, 528 F. Supp. 1254, 1259 (N.D. Ill. 1981); *see also Volk v. Coler*, 638 F. Supp. 1540, 1549 (C.D. Ill. 1986), *aff'd* 845 F.2d 1422 (7th Cir. 1988) (letters are insufficient to create personal involvement). The complaint fails to state a claim against the I.D.O.C's director and A.R.B. officials. The complaint is dismissed as to the defendants Ford, Tucker, Cravens and Snyder.

## **CONCLUSION**

For the foregoing reasons, the plaintiff may proceed against the Stateville defendants (Wainscott, Price, Foster, Griffin, Thomas, Miller, Briley, Mote, Cathings, Hughes and Lang) on those claims in Counts 2, 3 and 5 that have not been dismissed on preliminary review, as discussed more fully above. While a more completely developed record may belie the plaintiff's claims, those defendants must respond to the plaintiff's allegations. Counts 4, 6, 7 and 8 are dismissed without prejudice, as are the Pontiac defendants named in the complaint (that is, Officer John Doe, Funk, Hetman, Besley, Dr. John Doe, Jordan-Luster, Schomig, Quinely, Collins, Angishus, Hokes, Dallas and Melvin). The court finds that the plaintiff's claims relating to his treatment at the Pontiac Correctional Center were improperly joined in this action and must be litigated in a separate lawsuit in the U.S. District Court for the Central District of Illinois. The plaintiff's claims against A.R.B./I.D.O.C. officials and administrators in Count 8 are dismissed with prejudice, as those individuals lack direct, personal involvement in the matters giving rise to this lawsuit. The plaintiff has no cause of action under 42 U.S.C. § 1983 with respect to the denial of his appeals to the Administrative Review Board. The complaint will also be dismissed as to Stateville Officer John Doe, Sergeant Jane Doe and radiologist John Doe pursuant to 28

U.S.C. § 1915(e)(2)(B), as any attempt to identify those individuals and amend the complaint to name the proper parties would be untimely.

Consequently, the clerk is directed to terminate the Pontiac defendants (Officer John Doe, Funk, Hetman, Besley, Dr. John Doe, Jordan-Luster, Schomig, Quinely, Collins, Angishus, Hokes, Dallas and Melvin) pursuant to Fed. R. Civ. P. 20(a). The clerk is further directed to dismiss the defendants Stateville Officer John Doe, Sergeant Jane Doe, radiologist John Doe, Donald Snyder, Nancy Tucker, Melody Ford and Douglas Cravens pursuant to 28 U.S.C. § 1915(e)(2)(B). The clerk is also directed to terminate Stateville Officer John Doe, Sergeant Jane Doe and radiologist John Doe as defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)

The clerk shall issue summonses forthwith for service on Stateville defendants Wainscott, Price, Foster, Griffin, Thomas, Miller, Briley, Mote, Cathings, Hughes and Lang. The clerk is further directed to send the plaintiff Notice of Availability of a Magistrate Judge and Instructions for Submitting Documents along with a copy of this order.

The United States Marshal's Service is appointed to serve the above-named defendants. The court directs the Marshal to send USM-285 forms to the plaintiff so that he may provide the information necessary for the Marshal to serve the defendants with process. The U.S. Marshal is directed to make all reasonable efforts to serve the defendants. With respect to former correctional employees who no longer can be found at the work address provided by the plaintiff, the Illinois Department of Corrections shall furnish the Marshal with the defendant's last-known address. The information shall be used only for purposes of effectuating service [or for proof of service, should a dispute arise] and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file, nor disclosed by the Marshal. The Marshal is authorized to mail a request for waiver of service to the defendants in the manner prescribed by Fed. R. Civ. P. 4(d)(2) before attempting personal service. Pursuant to Fed. R. Civ. P. 30(a)(2), the defendants are granted leave to depose the plaintiff at his place of confinement.

18

The plaintiff is instructed to file all papers concerning this action with the clerk of court in care of the Prisoner Correspondent. The plaintiff must provide the original plus a judge's copy of every document filed. In addition, the plaintiff must send an exact copy of any filing to the defendants [or to defense counsel, once an attorney has entered an appearance on their behalf]. Every document filed must include a certificate of service stating to whom exact copies were mailed and the date of mailing. Any paper that is sent directly to the judge or that otherwise fails to comply with these instructions may be disregarded by the court or returned to the plaintiff.

ENTER:

*Blanche M. Manning*
Blanche M. Manning
United States District Court Judge

Dated: MAY 13 2003